**TEMPLE TRUST CO. et al. v. LYKES et al.**

No. 4431.

Court of Civil Appeals of Texas. Amarillo.
June 17, 1935.

Rehearing Denied Sept. 9, 1935.

Jno. B. Daniel, of Temple, Critz & Woodward, of Coleman, and Bean, Duggan & Bean, of Lubbock, for appellants.

Vickers, Campbell & Evans and Robt. A. Sowder, all of Lubbock, for appellees.

HALL, Chief Justice.

This suit was instituted by O. Lykes and wife, Mrs. F. E. Lykes, and the Lubbock National Company, against the appellants, Temple Trust Company, a corporation, and the Board of Pensions of the Presbyterian Church in the U. S. A., a foreign corporation, to have a certain loan contract adjudged as usurious, and to determine what amount of indebtedness the plaintiffs owed upon said contract, and to cancel the notes, deeds of trust, and other evidences of the debt, alleging that it was a cloud upon the title to the lots named in the deeds of trust. H. C. Glenn was made a party defendant by reason of the fact that he had been appointed receiver of the Temple Trust Company.

It is alleged that on or about the 17th day of January, 1927, Lykes and wife borrowed the sum of $12,500 from the Temple Trust Company, securing their indebtedness with a deed of trust on lots Nos. 1, 2, and 3, block 88, original town of Lubbock. They executed their note for the amount of the loan, which provided for 6 per cent. interest, payable semiannually on the 1st days of February and August of each year, beginning August 1, 1927. The semiannual interest dues were evidenced by coupon notes attached to the $12,500 note, and each coupon provided for interest after its maturity at 10 per cent. At the same time the first note and deed of trust were executed, plaintiffs executed another note in the sum of $2,509, payable to said Temple Trust Company in annual installments; the first being for $134 due August 1, 1927, and the remaining installments of $125 each due on August 1st of each and every year thereafter until the note was fully paid, and further executed a deed of trust as a second lien upon the above-described property to secure said last-described note. It is alleged that the last note represents additional interest on the principal note of $12,500.

The deed of trust securing the last note contains the following provisions:

"Said note hereinabove described being given for a part of the interest on a loan for $12,500.00 as evidenced by said bond secured by said first mortgage of even date herewith, and the said Temple Trust Company shall have all the rights of subrogation secured to Temple Trust Company by said first mortgage.

"It is therefore agreed that if the note or bond secured by the said prior mortgage is paid off and discharged according to the terms thereof, and the above described note for $2,509.00 hereby secured is paid off according to its face, tenor and effect, then this conveyance shall be void and the lien hereby created shall be released at our expense; but if default should be made in the payment of any of the installments of the note above described for $2,509.00 or of the note or bond secured by the first mortgage aforesaid, or if default should be made in the compliance with any of the terms or conditions of said first mortgage, which are hereby adopted and made a part of this instrument, then the whole sum of money hereby secured being the unpaid balance of said note for $2,509.00 shall become due and payable at the election of the holder thereof, without notice of said election to the grantors and the grantors hereby fully authorize and empower the said Temple Trust Company, or other legal holder of said note, or their attorney or agent appointed in writing, and acting at their request, at any time after default or failure as aforesaid, to sell said land on the first Tuesday of some month, between the hours of ten o'clock A. M. and four o'clock P. M. to the highest bidder for cash, at the court house door of Lubbock County, Texas, after having advertised the time, place and terms of such sale, together with a description of the property to be sold, by posting three written or printed notices thereof in three public places in Lubbock County, Texas, one of which shall be at the court house door of Lubbock County, for twenty-one days prior to day of sale, and after said sale aforesaid, the said Temple Trust Company or other legal holder of said note, or their attorney acting for them, shall make, execute and deliver to the purchaser or purchasers of said premises, a good and sufficient deed or deeds in law to the property so sold, in fee simple, and any statements or recitals

of facts in such deed shall be prima facie evidence of the truth of such statement or recital, and shall receive the proceeds of said sale, to be applied as follows: First, to the cost and expenses of making said sale, including a 5 per cent commission to said Temple Trust Company, or other legal holder of said note, their attorney or agent, for services; Second, to the payment and satisfaction of said note for $2,509.00 hereby secured; Third, to the payment and satisfaction of the note or bond secured by the above mentioned first mortgage, or any taxes, insurance or other sums due under the terms of said first mortgage; according to the conditions thereof; Fourth, the balance, if any, to be paid to the undersigned or to the heirs, assigns or legal representatives of the undersigned."

The plaintiffs further allege: That the above notes and deeds of trust evidencing the contract are usurious, in that they permit the Temple Trust Company and its assigns to collect from them more than 10 per cent. interest for any one year. That they have paid to the Temple Trust Company and its codefendants the sum of $5,850, making payments semiannually on or about the 1st days of February and August of each year, as provided by the contract, paying the coupon interest notes attached to the principal note, and likewise the semiannual installments payable on the $2,509 note. That when such credits are properly applied, the balance due on plaintiffs' indebtedness on the principal debt is $6,650, and that they are entitled to have the $2,509 note canceled by reason of the fact that it is usurious. They tender $6,650 in their pleadings, and pray for a cancellation of the deeds of trust.

The Board of Pensions of the Presbyterian Church in U. S. A. and H. C. Glenn, as receiver of the Temple Trust Company, answered by general demurrer and general denial, and further alleged: That the principal note described in plaintiffs' petition bears interest at the rate of 6 per cent. per annum, and the installment note of $2,509 evidences 2 per cent. additional interest to accrue on the principal note during the term of the loan. That the note for $12,500 and the first mortgage securing its payment, the installment note for $2,509 and the second mortgage securing its payment, were all executed at the same time, and together constitute the loan contract. That the first mortgage securing the note for $12,500 contains the following pro-

visions: "Whereas, for the better securing of said bond, with all interest to become due thereon to the said Temple Trust Company, or its successors and assigns, the said grantors herein do hereby covenant with the said Temple Trust Company as follows: That we will pay said bond with the interest thereon as the same becomes due and payable; that we have a good and perfect title in fee simple to said property and have a right to convey the same to said Temple Trust Company, and to its successors and assigns, in this mortgage as aforesaid; that we will pay all taxes and assessments, and premiums of insurance now due, or which may become due on said premises, or chargeable against said premises of Temple Trust Company, or its successors and assigns, before the same shall become delinquent, * * * provided that if any tax assessed within the State of Texas against the bond or debt secured hereby, or the interest in said premises of the said Temple Trust Company, or its successors and assigns, together with the interest paid or agreed to be paid on such bond or debt, shall exceed ten per centum per annum, then the grantors shall not pay such excess unless it shall have been first decided by the courts of last resort in this state, that the payment of such excess would not render this contract usurious, in which event grantors herein do covenant to pay the same on demand, and that we will keep all fences, buildings and other improvements now on said premises, or hereafter put thereon, in good condition and repair, and will do no act by which the value of said premises may be impaired."

That the note for $2,509 recites that the makers of said principal note of $12,500 were given the option of paying all or a part of said indebtedness prior to maturity, and provides that in the event such option is exercised and all or a part of said principal indebtedness should be paid prior to maturity, then the note for $2,509 secured by the second mortgage should be canceled or proportionately reduced, showing clearly that it was the intention of both parties to said contract that no unearned interest should be paid on said note for $2,509.

It is further alleged: That Lykes and wife, on or about August 26, 1927, by deed of that date, sold and conveyed the property covered by the deeds of trust herein to J. C. Moore for a consideration of $50,000 paid and secured to be paid by J. C. Moore as follows: $20,750 cash and the assump-

tion of the indebtedness evidenced by the $12,500 note executed by Lykes and wife to the Temple Trust Company. That thereafter, on or about October 14, 1929, Moore and wife, Lula Mildred Moore, sold and conveyed the property to R. E. Bristol for a consideration of $34,127.50 cash paid, and subject to the indebtedness held by the defendant Temple Trust Company. That thereafter, on or about February 18, 1931, by deed of that date, Bristol and wife, Roberta Bristol, sold and conveyed the property to O. Lykes for a consideration recited in said deed as follows: "Ten and no/100ths ($10.00) Dollars cash paid and other valuable considerations not necessary to mention, and the further consideration that the grantee is to assume any and all indebtedness and liens against the property described in said deed." That after the property was reconveyed to Lykes, he conveyed an undivided one-half interest therein to the Lubbock National Company. The assumption of the indebtedness by Lykes is set up as an estoppel to his right to plead usury as a defense.

By cross-action the Board of Pensions and Glenn, as receiver, complaining of Lykes and wife, of Tom Dobbins, a resident of Nolan county, of the Lubbock National Company, a private corporation organized and existing under the laws of Texas, and of the Lubbock National Bank, alleged the execution of the contract originally made by Lykes and wife with the Temple Trust Company; that the said Board of Pensions is the legal owner and holder of the principal note in the sum of $12,500; that default has been made in the payment of the interest coupon for $375 maturing February 1, 1933, representing interest on the first mortgage note at 6 per cent. from August 1, 1932, except that $220 has been paid as follows: $125 on April 15, 1933, $35 on August 14, 1933, $30 on September 27, 1933, and $30 on September 29, 1933; that default also has been made in the payment of interest coupons for $375 maturing August 1, 1933, and also interest coupon maturing February 1, 1934; and that each of said amounts are past due and unpaid. They further allege the execution by Lykes and wife of the second note for $2,509; that said installment note provides that if the principal indebtedness, or a part thereof, should be paid prior to maturity, then said installment note should be canceled or proportionately reduced, it being the purpose and intention of the parties to said contract that

no unearned interest should be paid on said installment note. They further set out the execution of the mortgages to secure the respective notes.

Glenn, as receiver, alleges the failure of plaintiffs to pay the installment in the sum of $125 due August 1, 1933, and a similar installment of $125 due February 1, 1934.

The prayer is for judgment in favor of the Board of Pensions of the Presbyterian Church in U. S. A. for the sum of $12,500, with interest on said amount from February 1, 1934, at the rate of 6 per cent. per annum, with 10 per cent. attorney's fees; also for the sum of $905, with interest on $150 of such amount from February 1, 1933, at 10 per cent. per annum, interest on $375 of such amount from August 1, 1933, at 10 per cent. per annum, and interest upon $375 of such amount from February 1, 1934, at 10 per cent. per annum, with attorney's fees; for judgment in favor of H. C. Glenn, receiver, for the sum of $250, with interest on $125 of such amount from August 1, 1933, at 10 per cent. per annum, and interest on $125 of such amount from February 1, 1934, at 10 per cent. per annum, together with attorney's fees, and for such further sum as will evidence 2 per cent. per annum interest to accrue on $12,500 from February 1, 1934, to the date of final judgment, with attorney's fees; that the lien in favor of the Board of Pensions of the Presbyterian Church in U. S. A. be decreed to be superior to the lien in favor of H. C. Glenn, receiver, and that the lien so held by cross-plaintiffs be foreclosed as to all defendants, and that said tract of land be decreed to be sold according to law; for costs of suit, etc.

The National Bank filed an answer and cross-action. The defendant Lubbock National Company, with permission of the court, took a nonsuit, and was dismissed without prejudice. Dobbins defaulted.

The case was tried to the court without a jury, resulting in a judgment October 20, 1934. The court concluded that the original loan was usurious; that $5,881.08 had been paid as interest on the obligation; that by reason of the usury Lykes was entitled to have the full amount of said payments credited upon the principal indebtedness, leaving a balance of $6,618.-92 as the only amount due on the $12,500 note. It was further decreed that the second mortgage securing the sum of $2,-509 should be canceled and set aside as an apparent lien upon the property; that the

Lubbock National Bank have diminution of the $12,500 note and the $2,509 note awarded to appellee Lykes in so far as the same might be claimed as a lien upon such property. The lien of the Board of Pensions was established at $6,617.92, due February 1, 1937, without interest, and that all claims of Glenn, the receiver, be extinguished. All other relief prayed for was denied.

The Temple Trust Company, its receiver Glenn, the Board of Pensions of the Presbyterian Church in U. S. A., have appealed.

As will be seen from the foregoing statement of the pleadings, the principal contentions by appellees are that usury is shown by the quoted stipulation in the trust deed securing the last note and the stipulation in the mortgage securing the first note, with reference to the payment of taxes which might possibly be assessed by the state of Texas against the indebtedness secured by the said mortgage.

■ The appellants insist that the issues involved on this appeal have been settled in its favor by Judge Baugh's opinion in the case of Walker v. Temple Trust Co., 60 S.W.(2d) 826, and Judge German's opinion (Tex. Com. App.), affirming the opinion of the Court of Civil Appeals, 80 S.W.(2d) 935, 938. The appellees insist that the two contracts are not the same, and discuss other terms in this contract which do not appear in either published report of the Walker Case. After a thorough investigation we are satisfied that except for the names of the parties and the amounts involved, and with one slight variation in one of the clauses, the two contracts are identical. Both opinions in the Walker Case construe the contract composed of the original notes, the first mortgage securing them, and the second or interest note and the mortgage securing it, as identical with the instruments involved in the instant case. Judge German's opinion is especially comprehensive, and clearly indicates that he examined the entire contract, made up of the several instruments, and considered it upon every possible ground of objection. He does not copy the contracts in full, nor in fact all the stipulations which tend to rebut the idea of an illegal intent. The stipulation with reference to taxes is discussed in both opinions, and when construed as a whole the writers of both opinions declare that there is no intent to charge illegal interest shown, but rather a willingness to abide by the decision of the appellate courts of the state.

There is a provision in the original note: "The maker of this bond reserves the option to pay $1,000.00 on February 1st of any year, and to pay in full on February 1, 1932, by giving Temple Trust Company thirty days advance written notice, and should such options be exercised, interest coupons attached maturing after such payments shall be proportionately reduced." It is difficult to conceive of language which would express more clearly the absence of a purpose to collect unearned interest.

The second mortgage contains the following provision, which also appears to be a part of the second mortgage discussed in the Walker Case: "This note is given for a part of the interest on a loan made to the undersigned by Temple Trust Company of $12,500.00 due February 1, 1937, and in case the maker hereof exercises the options of paying said loan or any part thereof before maturity, as provided in the bond evidencing said loan, then this note shall be proportionately reduced."

We have no copies of the briefs in the Walker Case, but it is clear from Judge German's opinion that the contract was thoroughly examined and analyzed, and he says that the contract, when "fairly construed as a whole, shows an intention not to" collect usurious interest. Further quoting from his opinion:

"The determination of whether or not usury exists in a contract is a matter involving first and pre-eminently the principle which is the polestar of construction, to-wit: The ascertainment of the dominant purpose and intention of the parties embodied in the contract, interpreted as a whole, in the light of the attending circumstances and the governing rules of law which presumptively they intended to observe and obey in making the contract.

"It is fundamental that to constitute usury there must exist an intention to exact more for the use, forbearance, or detention of money than the maximum allowed by law. Of course where the contract 'upon its very face imports usury, as by an express reservation of more than legal interest, there is no room for presumption, for the intent is apparent.' When, however, as here, the presence of usury is sought to be established by an isolated provision of an extensive contract, the true meaning of such provision must be arrived at by interpreting the language of the specific stipulation in harmony with and as a part of the dominant intent evidenced

by the contract in all its parts and as a whole. It is erroneous to say that any contingency, even though within the literal words of the contract, by which the lender may get more than the lawful rate of interest, makes the contract usurious, when such contingency is evidenced only by some isolated provision of a general contract, without inquiring further to determine the real meaning of such isolated stipulation in the light of the true intention of the parties. To give arbitrary force to some separate stipulation in the contract, without further inquiry, is to depart from the master principle of construction—the ascertainment of the real intention of the parties. * * *

"We think that in this instance the contract construed as a whole clearly is susceptible of a construction that, notwithstanding the literal words of the acceleration clause in the second deed of trust, the parties did not contemplate the payment of unearned interest in the event of default and maturity of the indebtedness. In fact, we think the contract fairly construed as a whole shows an intention not to do so. * * *

"This contract when fairly construed in all of its parts as a whole clearly manifests an intention on the part of defendant in error to avoid the collection of usurious interest, and negatives the idea that unearned interest was to be exacted. It is obvious, therefore, that the acceleration clause in the second deed of trust is so at variance with the general intent of the contract as a whole as to suggest that its appearance therein was due to the use of a printed form, without an intention that the literal language of the form was to create an obligation of liability in excess of the plain import of the notes themselves.

"It follows from this that there was no usury in the contract, and the judgment of the Court of Civil Appeals should be affirmed.

"Opinion adopted by the Supreme Court."

█ Aside from this matter, when Lykes accepted a reconveyance of the property, and as part consideration therefor assumed the indebtedness due the appellants, he waived his right to defend upon the ground of usury, if any existed, and became originally liable for the payment of the whole indebtedness. Van Meter v. American Central Life Ins. Co. (Tex. Civ. App.) 78 S.W.(2d) 251 (writ refused).

A further discussion of the propositions is unnecessary.

The contract is not usurious, and the judgment is reversed and the cause remanded.